**Adam R.F. Gustafson**
Principal Deputy Assistant Attorney General

**Mark Widerschein**
**Michelle Nkeng**
**Katharine Laubach**
Trial Attorneys
Natural Resources Section
Energy & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Mark.Widerschein@usdoj.gov
Michelle.Nkeng@usdoj.gov
Katharine.Laubach@usdoj.gov
(202) 532-5803 (Widerschein)
(202) 598-6660 (Nkeng)
(202) 353-5765 (Laubach)
*Counsel for the United States*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| STATE OF IDAHO,<br><br>Plaintiff/Movant,[1]<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant/Respondent. | Case No. 1:26-cv-00546<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO MOTION FOR DECLARATORY JUDGEMENT** |

[1] The United States does not concede that the State of Idaho is properly termed a Plaintiff, as they have not filed a complaint in association with the removed motion. Nonetheless, to avoid waiving any defense, the United States files this response pursuant to District of Idaho Local Rule 81.1(b).

## I. Introduction

The State of Idaho ("State") filed a motion seeking a declaratory judgement ("Motion") that asks the Snake River Basin Adjudication ("SRBA") court to declare that the Idaho Department of Water Resources ("IDWR"), through its Director, has the authority to regulate and curtail water uses critical to national security at the Department of Energy's ("DOE") Idaho National Laboratory ("INL"). Under the Supremacy Clause and federal sovereign immunity, those administrative agencies do not have such authority. The McCarran Amendment waived the United States' sovereign immunity only for two narrow categories of lawsuit: comprehensive suits for adjudication of water rights or the administration of such water rights. An administrative proceeding of IDWR, purely at the discretion of its Director, is neither.

The Motion is fatally flawed for many other independent reasons. First, the Court lacks jurisdiction, as the State has not filed a complaint and is not a party to the SRBA subcase from which its motion was removed. Accordingly, the State does not have standing to file a motion in that subcase. Second, even if the State did have such standing, the SRBA court does not have jurisdiction under the Idaho Declaratory Judgment Act ("IDJA"), because its jurisdiction over the United States regarding this water right claim terminated in 1998 and never extended to constitutional questions in the first place. Third, Idaho law requires that a motion such as this be filed in district court, not in the SRBA. Finally, even if the SRBA court itself had jurisdiction to issue a declaratory judgment, it could not exercise it over the United States, as no waiver of sovereign immunity applies. The Motion is a blatant attempt to evade the United States' immunity by laundering a constitutional argument through the McCarran Amendment. The Court should reject the Motion, and instead, proceed with resolving the United States' own constitutional claims in the action initiated by the United States on September 11, 2026, in Case No. 1:26-cv-00592.

## II. Background

### a. Factual Background

#### i. The Idaho National Lab

Established in 1949 as the National Reactor Testing Station, INL is an 890-square-mile DOE facility in southeastern Idaho. *See* Decl. of Robert Boston ¶ 3 ("Boston Decl.") (attached at Ex. 1). For over seventy years, the INL has served as the backbone of nuclear innovation for the United States. *Id.* It is home to the historic Experimental Breeder Reactor-I, which produced the world's first usable nuclear-generated electricity in 1951, and played a foundational role in prototyping and testing nuclear reactors for the U.S. Department of the Navy ("Navy"). *Id.*

Today, the INL is the United States' lead laboratory for nuclear energy research, development, and demonstration. *Id.* ¶ 4. These programs rely entirely on highly specialized facilities available at INL that are unavailable anywhere else in the world. *Id.* These include the Advanced Test Reactor, which "is the only reactor capable of exposing potential commercial and naval nuclear components to intense neutron radiation to simulate decades of wear in a matter of months;" the Materials and Fuels Complex, which hosts the nation's largest hot-cell facilities for studying irradiated materials and fabricating high-assay low-enriched fuels; and the National Reactor Innovation Center DOME Test Bed. *Id.* The INL also hosts the Naval Nuclear Propulsion Program's Naval Reactors Facility, a joint Navy-DOE program which supports the "nation's ability to design, build, and operate Navy's submarines and aircraft carriers." *Id.*

The INL is of critical national importance to "a historic nuclear energy renaissance." *Id.* ¶ 5. In May 2025, Executive Order 14301, 90 Fed. Reg. 22591 (May 23, 2025), established the Reactor Pilot Program, which "set an ambitious goal to construct, authorize, and achieve zero-power criticality" on at least three advanced reactors this year. *Id.* Executive Order 14301

"specifically named the INL as having principal responsibility for facilitating the construction and testing of new reactor designs." *Id.*

The INL's operations support national security, including Navy operations, and energy security in the form of a robust civil nuclear energy program. *Id.* ¶ 8. Forcing these facilities to cut off water use would "halt research support for the Navy's nuclear-powered warships and commercial advanced reactor licensing," and would "force a suspension of new reactor and fuel fabrication projects at the INL[.]" *Id.* ¶ 7.

**ii. The SRBA and DOE's water right**

The INL uses water for its operations pursuant to a federal reserved water right recognized in the SRBA, which adjudicated all claims to uses of water associated with the Snake River Basin in Idaho. The main phase of the SRBA lasted from 1987 to the entry of the Final Unified Decree in 2014.[2] As to DOE's uses at the INL, the State and DOE entered into a Water Rights Agreement in 1990 which recognized a water right held by the United States for the benefit of DOE in the amount of 35,000 acre-feet-annually, with a priority date of April 7, 1950. *See* Dkt. No. 1-3. The United States and the State agreed that the right "is a Federal Reserved Water Right with all the characteristics appertaining thereto" and "[n]on-use of all or any part of the Federal Reserved Water Right shall not constitute a relinquishment, forfeiture, or abandonment of the right." *Id.* at 8. However, the United States and the State were "unable to agree upon whether the issue of administration is ripe or otherwise appropriate for decision in the SRBA, and if so, whether and to what extent the Director has authority to administer federal water rights" and, accordingly, "[e]ach party reserve[d] the right to litigate the issue of administration, if and when the need arises." *Id.*

---

[2] A secondary phase, in which claims to *de minimis* uses of water for livestock and domestic use are being adjudicated, is ongoing, but irrelevant to the water right at issue here.

DOE's water right was decreed in the SRBA on June 20, 2003, *nunc pro tunc* to January 15, 1998. *See* Dkt. No. 1-4. On August 25, 2014, the SRBA court issued its Final Unified Decree, which incorporated the partial decree and Water Rights Agreement. *See* Dkt. No. 1-5. ("Final Unified Decree"). The Final Unified Decree was conclusive as to the nature and extent of all water rights within the Snake River Basin within the State with a priority date prior to November 19, 1987, subject to certain exceptions not relevant here. *Id.* at 7. Importantly, the Final Unified Decree (like the Water Rights Agreement) did not specify how the water right would be administered. Instead, it is silent on that issue, and to the extent anything in the Final Unified Decree conflicts with settlements, it defers to their terms: "[i]n the case of any conflict between this Final Unified Decree and the partial consent decrees approving reserved water right settlements, the partial consent decrees approving the reserved water right settlements . . . shall control." *Id.* at 10–11; *see also id.* at 13 (providing that administration would be in accordance with the Final Unified Decree and "applicable federal, state and tribal law, including the administrative provisions set forth in the federal reserved water right settlement agreements"). Because the Water Rights Agreement expressly identified administration as an issue to be addressed in the future, and the Final Unified Decree incorporates the Water Rights Agreement, the Final Unified Decree does not conclusively define the administration of DOE's water use.

**iii. The State's curtailment of DOE's water right**

In 2005, several surface water users in the State initiated what IDWR terms the Surface Water Coalition Delivery Call. In that administrative proceeding, surface water users made a delivery call to curtail water use by groundwater users, claiming that junior ground water pumping was depleting the Eastern Snake Plain Aquifer and the hydrologically connected Snake River. While there have been ongoing proceedings before IDWR regarding, e.g., the methodology to

evaluate the water supply and crop need conditions each year, the United States has generally not participated in that administrative process.

In 2025, due to ongoing drought, the Delivery Call escalated. On July 25, 2025, the Director of IDWR entered an order curtailing ground water rights junior to October 11, 1900.[3] However, although DOE's water right (with a 1954 priority date) is junior to October 11, 1900, IDWR, without explanation, excluded it from the list of water rights to be curtailed in 2025. *See id.*, Attach. A.[4] This omission is understandable in light of the agreement between the United States and Idaho in the SRBA which did not establish administrative authority over DOE's water right at the INL. In 2026, however, the Director of IDWR *did* include the DOE water right on the list of water rights to be curtailed. *See* Dkt. No. 1-6. No explanation was provided for the discrepancy in the 2026 Curtailment Order compared to the 2025 Curtailment Order. Under the terms of the 2026 Curtailment Order, holders of the listed water rights would have their water rights curtailed unless they joined a groundwater district for mitigation purposes. *Id*. As a result, in late May, DOE filed a special appearance and petition for reconsideration through IDWR's administrative processes, contesting IDWR's authority to curtail or otherwise administer the DOE water right. *See* Dkt. No. 1-7; Boston Decl. ¶ 8.

As a matter of comity and to ensure continuity of the INL's important programs, DOE also paid to join a groundwater district for mitigation purposes, as suggested by the 2026 Curtailment

---

3 *See* https://idwr.idaho.gov/wp-content/uploads/sites/2/legal/CM-DC-2010-001/CM-DC-2010-001-20250725-Final-Order-Curtailing-Ground-Water-Rights-Junior-to-October-11-1900.pdf.

4 Other water rights held by the United States for the benefit of other federal agencies were included in both 2025, and again in 2026. Agencies that are still subject to the current curtailment include the Department of Agriculture (Agricultural Research Service) and Department of the Interior (Bureau of Land Management, Bureau of Indian Affairs, Bureau of Reclamation, Fish and Wildlife Service, and National Park Service).

Order, under protest, without waiving its contentions that (1) IDWR does not have authority to curtail the DOE water right; and (2) that Idaho law restricts federal agencies from joining such groundwater districts. *Id.* ¶ 10. On July 27, 2026, IDWR filed an "Order Rescinding 2026 Curtailment of DOE Water Right No. 34-10901; Order Denying Request for Hearing" ("Rescission Order"). Dkt. No. 1-8. The Rescission Order rescinded the curtailment of the DOE water right based on DOE's mitigation participation. It also declared that DOE's request for reconsideration was denied by operation of law and stated that the issues raised by DOE in its petitions were "more appropriately raised before the SRBA District Court." *Id.* at 3.

On the same day that IDWR issued the Recission Order, the State filed the Motion. *See* Dkt. No. 1-1 at 7–37 ("Motion"). Pursuant to IDJA, Idaho Code §§ 10-1201-1217, the State seeks "an order declaring that [the DOE water right] is subject to administration by the Director . . . in accordance with Idaho law, including, but not limited to, an order from the Director requiring [DOE] to either curtail diversions or provide mitigation[.]" *Id.* at 11.

On August 24, 2026, the United States removed the Motion to this Court pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446(b), and on September 11, 2026, the United States filed a separate civil action against the State, asserting that the statutory scheme is unconstitutional and violates federal law. *See* 1:26-cv-00592-REP, Dkt No. 1.

**b. Legal Background**

**i. Supremacy Clause**

It is black-letter constitutional law that the United States Constitution and federal laws "shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. As the Supreme Court has explained, "the Constitution guarantees 'the entire independence of the General Government from any control by the respective states.'" *Trump v. Vance*, 591 U.S. 786, 800 (2020) (quoting *Farmers*

*and Mechanics Sav. Bank of Minneapolis v. Minnesota*, 232 U.S. 516, 521 (1914)).

The Supremacy Clause encompasses the doctrine of intergovernmental immunity, which "arose from the Supreme Court's decision in *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), which established that 'the states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government.'" *United States v. City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010) (citation omitted). Accordingly, "[i]t is well settled that the activities of federal installations are shielded by the Supremacy Clause from direct state regulation unless Congress provides clear and unambiguous authorization for such regulation." *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 180 (1988) (citation modified).

**ii. Sovereign Immunity**

Sovereign immunity "shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). If Congress has not consented that the United States be sued on a claim, the court lacks subject matter jurisdiction, *see Balser v. Dep't of Justice*, 327 F.3d 903, 907 (9th Cir.2003), and Idaho state law cannot waive it, *see Idaho Dep't of Water Res. v. United States*, 122 Idaho 116, 119 (1992), *rev'd on other grounds,* 508 U.S. 1 (1993). The waiver "must be unequivocally expressed in statutory text" and "will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996). The party asserting claims against the United States bears the burden of demonstrating that a waiver of sovereign immunity applies. *See United States v. Park Place Assocs., Ltd*., 563 F.3d 907, 924 (9th Cir. 2009).

Sovereign immunity extends to both state administrative proceedings as well as judicial proceedings. *See United States v. Washington*, 872 F.2d 874, 877 (9th Cir. 1989) (holding that "Congress has not expressly waived sovereign immunity from civil penalties imposed by state

administrative agencies"). Removal of a motion by the United States does not waive sovereign immunity. *See, e.g., Bodi v. Shingle Springs Band of Miwok Indians*, 832 F.3d 1011, 1015 (9th Cir. 2016) (tribal federal sovereign immunity not waived by removal).

**iii. The McCarran Amendment**

The McCarran Amendment is a limited waiver of sovereign immunity which provides in relevant part:

> Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit.

43 U.S.C. § 666. By these terms, the waiver of sovereign immunity under the statute applies for the limited purpose of allowing the joinder of the United States to comprehensive general stream adjudications for the determination of competing water rights claims within a river system in a state and the subsequent administration of the rights determined in the adjudication. *See United States v. District Court In and For the County of Eagle and State of Colorado*, 401 U.S. 520, 524 (1971); *Dugan v. Rank*, 372 U.S. 609, 618 (1963); *Metro. Water Dist. of S. Cal. v. United States*, 830 F.2d 139, 144 (9th Cir. 1987) (per curiam) ("The McCarran Amendment, however, does not authorize private suits to decide priorities between the United States and particular claimants, only suits to adjudicate the rights of all claimants on a stream."), *aff'd sub nom.*, *California v. United States*, 490 U.S. 920 (1989) (per curiam). A key element of the McCarran Amendment's waiver of sovereign immunity is that it is limited to participation in a judicial "suit." 43 U.S.C. § 666(a). As a necessary corollary, it does not waive the United States' sovereign immunity for relief sought

against it in purely administrative proceedings. *See id.*; *see also United States v. Oregon*, 44 F.3d 758, 767 (9th Cir. 1994).

#### iv. Jurisdiction on removal

The State's Motion has been removed from the SRBA court. "[T]he jurisdiction of a federal court over a case removed from a state court is derivative in nature …. If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none[.]" *Washington v. Am. League of Pro. Baseball Clubs*, 460 F.2d 654, 658 (9th Cir. 1972) (quoting *Lambert Run Coal Co. v. B & O R. R. Co.,* 258 U.S. 377, 382 (1922)). Accordingly, on removal, the Court applies federal procedural law, *see* Fed. R. Civ. P. 81(c)(1), but the same substantive law the state court would apply.

## III. Argument

### a. No court has jurisdiction to hear the Motion[5]

#### i. The State is not a party to Subcase No. 34-10901

The State filed its Motion in SRBA Subcase No. 34-10901. However, the State is not, and was never, a party to that subcase. Accordingly, the State lacks any authority to file a motion—and neither the SRBA court, nor this Court, has jurisdiction to hear it. In the SRBA, the parties to a subcase are:

> The claimant, any objector or respondent to a water right recommendation, any party to a subcase which has been consolidated with another subcase, any party to the adjudication granted leave to participate in a subcase by the Presiding Judge or a Special Master, and any party to the adjudication filing a Motion to Alter or Amend the Special Master's Recommendation.

---

[5] Because the State did not file a Complaint, *see infra* Section III(a)(ii), the United States has not had an opportunity to file a motion to dismiss. However, to avoid waiving arguments that the Court lacks jurisdiction, the United States asserts lack of jurisdiction as a defense to the Motion. If the State properly files a complaint, the United States reserves the right to move to dismiss pursuant to Fed. R. Civ. P. 12.

SRBA Administrative Order 1 ("AO1") § 2(p).[6] None of those circumstances applies to the State. The United States was a party as the claimant to the water right. The State did not object to the claim, did not seek leave to participate, and did not move to alter or amend the water right recommendation. *See* Dkt. No. 1-2 at 1 (SRBA Register of Actions) ("ROA"). Indeed, the SRBA court's ROA did not show the State as a party, even after filing the Motion. *Id.* (identifying "parties involved" as only the United States of America). The State could have sought to intervene, but did not do so.

It is well-established in Idaho law that a non-party may not file a motion. *See State v. Draper*, 151 Idaho 576, 597 (2011) (holding a non-party "has no standing to make a motion to the court"); *see also Johnson v. Pioneer Title Co. of Ada Cnty.*, 104 Idaho 727, 731 (Ct. App. 1983) (noting "the district court did not rule on the merits of Pioneer's motion, but simply concluded that Pioneer lacked standing, as a nonparty, to seek any relief in the case"). Because the State is not and has never been a party to Subcase No. 34-10901, it had no standing to move the SRBA court for any relief. Standing is a jurisdictional question. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 86 (1998). If a plaintiff does not have standing to bring the claim, the Court must dismiss the claim for lack of jurisdiction. *Id.* The State's failure to comply with basic tenets of civil procedure are fatal to the Motion.

**ii. The State did not file a complaint, and thus, cannot proceed with its Motion**

In addition to being a non-party, the State filed its Motion without filing an associated complaint. This is improper under the Idaho Rules of Civil Procedure ("IRCP"). The IRCP requires that "[a] civil action **must** be commenced by filing a complaint, petition, or application with the

[6] Accessible at https://srba.idaho.gov/forms/AO1.pdf.

court."[7] IRCP 3(b) (emphasis added). In Idaho, "the filing of a complaint commences a civil action and **is an essential jurisdictional element**." *Hauschulz v. State, Dep't Of Correction*, 143 Idaho 462, 466 (Ct. App. 2006) (internal citation omitted) (emphasis added). The Motion is none of those, and accordingly, this action was not properly commenced, which is a jurisdictional barrier to continuing with the proceeding. Just as the State's Motion ignores its non-party status, it ignores the lack of a complaint. Rather, the State seemingly presumed that it could file the Motion because the United States has a water right and proceeded to do so. But this is fundamentally improper. The existence of a complaint initiating a civil action between two parties is jurisdictional; without it, there is no basis for proceeding to the merits of the motion.

The existence of proceedings from 1998 to 2003 does not salvage the Motion. Those one-party proceedings did not involve the State, and the SRBA court only had "[j]urisdiction . . . until it issue[d] a final order concerning the particular water right at issue." *Walker v. Big Lost River Irr. Dist.*, 124 Idaho 78, 81, 856 P.2d 868, 871 (1993). The final order in this case was issued June 20, 2003, *nunc pro tunc* to January 15, 1998. *See* Dkt. No. 1-4 at 1–2. To the extent the SRBA court was exercising jurisdiction over the United States – and only the United States – in that subcase, it terminated in 1998. The SRBA court then retained limited jurisdiction only to "resolve any issues related to the Final Unified Decree." Dkt. No. 1-5 at 13. But the Motion is fundamentally a new dispute, not an issue related to the Final Unified Decree. The State does not challenge the Final Unified Decree, and does not seek to comprehensively administer the Final Unified Decree

[7] Petitions arise under Idaho Rule of Civil Procedure 84 for judicial review of state agency actions. *See* IRCP 84(b)(1); *see also Riverton Citizens Grp. v. Bingham Cnty. Commissioners*, 171 Idaho 898, 901 (2023). Applications to the court arise in narrow contexts, including civil commitment, *see In re Commitment of Doe*, No. 40093, 2013 WL 5984341, at *1 (Idaho Ct. App. May 30, 2013), habeas corpus, *see State ex rel. Spanton v. Clapp*, 78 Idaho 239, 240 (1956), and probate matters, *see In re McCann's Est.*, 94 Idaho 386, 387 (1971).

as to all parties. This is clearly a two-party constitutional dispute about the relative authorities of state and federal entities, and the Motion raises only second-order questions of IDWR's authority under state and federal law. The SRBA proceedings from 1998 to 2003 are insufficient to sustain the State's Motion, and certainly not without a new pleading.

Finally, the use of the IDJA does not resolve the State's jurisdictional problem. The IDJA "does not create any new substantive rights, but rather, authorizes a form of relief." *Sommer v. Misty Valley, LLC*, 170 Idaho 413, 420 (2021). It follows, then, that this "authority is circumscribed by the rule that 'a declaratory judgment can only be rendered in a case where an actual or justiciable controversy exists.'" *Schneider v. Howe*, 142 Idaho 767, 772 (2006) (quoting *Harris v. Cassia County*, 106 Idaho 513, 516, (1984)). The IDJA "does not relieve a party from showing that it has standing to bring the action in the first instance." *Id.* Indeed, the text of the IDJA contemplates an "action or proceeding." Idaho Code § 10-1201. Because the State is not a party to the underlying subcase, and has not filed a complaint, there is no justiciable controversy between the United States and State for the Court to resolve.

**iii. The SRBA court lacks jurisdiction to issue declaratory judgment on a constitutional matter**

Even if the State were a party to and had filed a complaint in the subcase, it is still wholly unclear that the SBRA court's jurisdiction extends to issuing a declaratory judgment, particularly when it would not be addressing a matter directly related to adjudicating water rights. The Idaho Supreme Court has observed that it is an open question. *See In re SRBA Case No. 39576, Twin Falls Canal Company, et. al, v. IDWR*, 127 Idaho 688, 689 (1995) (denying request for declaratory judgment because IDWR was not a party to the adjudication but deferring "the question of the SRBA district court's jurisdiction to entertain the canal companies' petition for declaratory relief").

But even if the SRBA court's jurisdiction does extend to certain declaratory judgments, it is not unlimited to any matter the State may wish to have heard. As this Court recently observed in another water-related matter, the SRBA court's jurisdiction is limited: it "retains jurisdiction to resolve issues related to the existence, validity, and substance of water rights possessed by the parties before it," but "the SRBA court does not retain (nor did it ever have) jurisdiction to review the constitutionality of legislation enacted subsequent to that adjudication." *United States v. Idaho*, 746 F. Supp. 3d 881, 900 (D. Idaho 2024). Here, as a removed action, the Court exercises only the jurisdiction the SRBA court would have. There is no dispute here about the existence, validity, or substance of a water right. Instead, what Idaho seeks in the Motion is a constitutional determination about a state agency's authority. The SRBA court cannot retain jurisdiction it never had to opine on constitutional disagreements between the State and the United States, and this Court cannot exercise jurisdiction the SRBA court did not acquire.

**iv. Idaho law requires the Motion to have been filed in a different court**

As an additional barrier to proceeding, the State legislature has channeled the review of IDWR's actions out of the SRBA court. "Review of an agency action of the department of water resources … shall not be heard in any water rights adjudication proceeding commenced under this chapter." Idaho Code § 42-1401D. Instead, "[v]enue and jurisdiction over any such action … shall be in the district court as authorized under the provisions of section 67-5272, Idaho Code, without regard to any other provision of law." *Id.* In this case, that would be Idaho's Fifth Judicial District sitting in its non-SRBA capacity. The bar is jurisdictional: it "shall not be heard" in the SRBA. The State, perhaps seeking to evade this bar, seeks to posture the Motion as not seeking review of IDWR's actions. While the State has not formally framed it as such, that is exactly what the Motion is. IDWR took an action, DOE sought reconsideration, and the State – expressly in lieu of resolving

it before the IDWR and then under the Idaho APA – filed the Motion seeking a resolution of DOE's concerns. The legislature clearly intended to channel two-party disputes about IDWR's actions such as this out of the SRBA and into traditional district court actions. The State's evasion of proper procedure is thus twofold: Idaho law requires filing the Motion as a new complaint in state district court, not in the adjudication. But sovereign immunity would clearly prevent that case from proceeding. The State presumably filed in the SRBA to try and squeeze its Motion into the McCarran Amendment's waiver of sovereign immunity. As we explain next, that waiver does not apply, and the State's gambit fails.

**v. No waiver of sovereign immunity applies**

Even setting aside the defects raised above, there is no waiver of sovereign immunity that would allow the State – in the SRBA or elsewhere – to seek a declaration that a state agency has the power to regulate and curtail a federal agency's water right. The State bears the burden to show an unequivocal waiver and has failed to do so.

As an initial matter, while the Motion is brought pursuant to the IDJA, a state statute cannot waive federal sovereign immunity. The only potentially applicable waiver of sovereign immunity the State identifies, then, is the McCarran Amendment. But the McCarran Amendment does not authorize bringing any claim, so long as it is tangentially related to water rights. It is "not intended . . . to be used for any other purpose than to allow the United States to be joined in a suit wherein it is necessary to adjudicate all of the rights of various owners on a given stream." *United States v. Dist. Court In & For Eagle Cty., Colo.*, 401 U.S. 520, 525 (1971) (quoting Senator McCarran, Chairman of the Committee). It does not authorize suits against the United States except those specifically identified by its terms – suits for general stream adjudications or the administration of rights recognized in such adjudications – even if they are tangentially related to

water rights. *See* 43 U.S.C. § 666; *see also, e.g.*, *Nevada ex rel. Shamberger v. United States*, 279 F.2d 699, 701 (9th Cir. 1960) (holding that a suit "brought by the state against the United States to secure a decree establishing that the underground waters are the property of the State of Nevada, subject to the right of appropriation by the United States upon compliance with the laws of the state[,]" was not a suit for adjudication or administration within the McCarran Amendment's terms because the state sought only to vindicate "a declaration of her sovereign, proprietary right to the corpus or control of waters in general"); *see also Miller v. Jennings*, 243 F.2d 157, 159 (5th Cir. 1957) ("The United States has not given its consent to be joined as a defendant in every suit involving water rights."); *San Luis Obispo Coastkeeper v. U.S. Dep't of the Interior*, 394 F. Supp. 3d 984, 995 (N.D. Cal. 2019), *aff'd*, 827 F. App'x 744 (9th Cir. 2020). The United States has not consented to two-party constitutional litigation in Idaho's courts through the McCarran Amendment.

Further, this bar to the Motion applies even if the Court determines that it falls within the SRBA court's retained jurisdiction. As noted above, the McCarran Amendment authorizes the United States' joinder in two forms of comprehensive state-court proceedings: adjudication and administration. 43 U.S.C. § 666. A dispute over constitutionality of an IDWR action is neither of those categories. The State argues that once the United States was joined to the SRBA, it must be subjected to any tangential litigation filed in the SRBA, forever. But this is not so. Waivers of sovereign immunity "must be strictly construed in favor of the sovereign." *Orff v. United States*, 545 U.S. 596, 602 (2005), and the State cannot evade the United States' sovereign immunity by terming its lawsuit as an adjudication motion.

The Motion is plainly not an adjudication of water rights. As explained above, there is no dispute about the nature of DOE's water rights. Nor is the Motion a suit to administer DOE's water

right. A judgment in the State's favor will not result in McCarran-compliant administration. Instead, it is second-order from what the McCarran Amendment allows. Waivers of sovereign immunity must be construed strictly; declaratory judgment here does not legitimize the delivery call proceeding's unconstitutionality. The "purpose of the McCarran Amendment is not to waive sovereign immunity whenever litigation may incidentally relate to water rights administered by the United States." *San Luis Obispo Coastkeeper*, 394 F. Supp. 3d at 995. While the State seemingly seeks to squeeze its motion into the administration prong, fundamentally, "[t]his is not a suit to adjudicate or **administer the rights of all claimants on a stream**." *Orff v. United States*, 358 F.3d 1137, 1143 (9th Cir. 2004), *aff'd*, 545 U.S. 596 (2005) (emphasis added).

Instead, it is a traditional two-party dispute between the State and the United States as to a state agency's authority. *Id.*; *see also United States v. Dist. Court In & For Water Div. No. 5, Colo.,* 401 U.S. 527, 529 (1971) (finding the McCarran Amendment "does not cover consent by the United States to be sued in a private suit to determine its rights against a few claimants"). Indeed, it would be quite odd to suggest that the McCarran Amendment, which had an overriding purpose of eliminating two-party litigation in favor of comprehensiveness, authorizes two-party constitutional litigation. Because ambiguities in waivers of sovereign immunity must be construed in favor of the sovereign, the Court should not stretch the McCarran Amendment beyond its limited bounds; and because no waiver of sovereign immunity applies, the Court cannot hear the State's Motion.

**b. IDWR lacks authority to administer DOE's water right in an administrative agency proceeding[8]**

[8] As noted above, the State has not filed a complaint, so the United States did not have the opportunity to file a Motion to Dismiss. *See supra* fn. 6. The Ninth Circuit has noted that sovereign immunity is not waived when the removing entity "asserted its immunity defense promptly upon removal to federal court and neither it, nor any Defendant, ever voiced an intent to litigate on the merits." *Bodi v. Shingle Springs Band of Miwok Indians*, 832 F.3d 1011, 1017 (9th Cir. 2016). The

To the extent the Court proceeds to the substance of the State's Motion, IDWR is constitutionally barred from administering federal water rights. The State's Motion seeks a declaration that "water right 34-10901 is subject to administration by the Director of [IDWR]." Dkt. No. 1-1 at 11. The State does not hide that its desired outcome is the regulation of a federal agency by a state agency – indeed, that is the fundamental nature of the relief sought. But the Supremacy Clause and federal sovereign immunity prevent this result. Accordingly, the United States is entitled to a declaration that IDWR does not have authority to administer this water right, or any water right held by the United States.

The State first attempts to muddy the waters by misstating the United States' position. It argues that the United States' assertion of its constitutional rights would "gravely undermine a principal objective of the SRBA . . . to make the United States 'subject to the judgments, orders, and decrees' of this court." Dkt. No. 1-1 at 28. But the United States does not contest that its rights were lawfully adjudicated in the SRBA, and it does not dispute the scope of its decreed water right.[9] Nor does it contest that its rights would be subject to a "suit . . . for the administration of such rights," 43 U.S.C. 666(a), if such a suit were commenced. Instead, the United States simply contests that a state agency proceeding, with no judicial involvement, at the sole discretion of the Director of IDWR, is not such a suit. Indeed, under both the doctrine of intergovernmental immunity and well-established Ninth Circuit McCarran Amendment precedent, the agency proceeding in question is not such a suit.

---

United States promptly asserted its immunity defense upon removal, and asserts that it accordingly should not be required to litigate on the merits. However, to avoid waiver, the United States respectfully provides this substantive response to the Motion.

[9] Indeed, it is the State that tramples on the finality of the SRBA by curtailing decreed water rights without constitutional authority to do so.

Inter-governmental immunity bars the State's curtailment scheme. As the Supreme Court has explained, "the Constitution guarantees 'the entire independence of the General Government from any control by the respective States.'" *Trump*, 591 U.S. at 800 (2020) (quoting *Farmers*, 232 U.S. at 521). Accordingly, "states may not directly regulate the Federal Government's operations or property." *Blackburn v. United States*, 100 F.3d 1426, 1435 (9th Cir. 1996). The State's curtailment scheme is clearly both: it seeks to directly impede the United States' activities at the INL through control of its use of water and seeks to regulate how it uses its valuable groundwater property right. Nor does the State contest this: the Motion outright seeks the authority to regulate DOE and other federal agencies.

No exception to intergovernmental immunity applies. "It is well settled that the activities of federal installations are shielded by the Supremacy Clause from direct state regulation unless Congress provides clear and unambiguous authorization for such regulation." *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 176 (1988) (citation modified). No clear and unambiguous authorization for administrative proceedings purely before a state agency exists. Instead, Congress approved an entirely different mechanism for adjudicating and administering water rights owned by the United States: comprehensive suits in courts. The IDWR administrative proceeding and the matter before this Court do not amount to a comprehensive suit.

The State cannot argue that the IDWR administrative proceeding is a suit – and does not even attempt to do so. The Ninth Circuit has held that a state-agency proceeding passed McCarran Amendment muster only where "the case is initiated in court and then referred to an agency for administrative proceedings, or is initiated through an administrative procedure before being reviewed by a court." *Oregon*, 44 F.3d at 767. And the Ninth Circuit rejected Oregon's attempt to require the United States to participate in a claim registration process that occurred solely before

the State Engineer, reasoning that "the United States has not consented to be a part of this process." *Id.* at 770. IDWR's administrative proceedings were not initiated in a court, and they do not flow automatically to a court for confirmation. Instead, Idaho law vests discretion entirely in the hands of the Director of IDWR. The State accuses the United States of an "impermissible collateral attack" on the Final Unified Decree. Dkt. No. 1-1 at 30. But the only collateral attack is IDWR's usurpation of administration from its proper venue.

Perhaps recognizing that the IDWR proceeding cannot be a suit under the McCarran Amendment, the State bafflingly argues that the United States is precluded from arguing that the Director – who certainly is not the SRBA court – cannot administer water rights, because it did not appeal the Final Unified Decree which "conclusively determined that the SRBA is an action for the adjudication and administration of all water rights in the [SRBA]." *Id.* This is exactly the United States' point. The SRBA court clearly has authority to comprehensively administer water rights, but it does not follow that the Director can do so independently. Similarly, the State emphasizes that the SRBA Court acquired "exclusive" jurisdiction "over the 'adjudication' and 'administration' of *all* claimed water rights." *Id.* at 24. How, then, does the Director have any authority to independently administer water rights? The State does not answer.

Finally, the State argues that "[s]tate administration of the United States' decreed water rights under state law procedures has been the norm." *See id.* at 32. This is generally true but elides the crucial difference: laws among the states differ. The statutory scheme must still pass constitutional muster.[10] Here, the State's two citations in support underline the State's problem. They both discuss Nevada law, which materially differs from Idaho on this issue. *See id.* (quoting

---

10 As the Ninth Circuit observed in *Alpine Land & Reservoir Co.,* "state law will control the distribution of water rights to the extent that there is no preempting federal directive." *United States v. Alpine Land & Reservoir Co.*, 697 F.2d 851, 858 (9th Cir. 1983).

*United States v. Bd. Of Water Commissioners,* 893 F.3d 578, 595 (9th Cir. 2018), and *United States v. Alpine Land & Reservoir Co.*, 697 F.2d 851, 858 (9th Cir. 1983)). Under Nevada law, unlike Idaho law, distribution of water by the State Engineer occurs only "under the supervision and control of the district court." Nevada Revised Statute § 533.220(1). The only method for enforcing a delivery call in Nevada is for the Nevada State Engineer to "petition the district court having jurisdiction of the matter for a review of such order." *Id.* § 533.220(2); *see also Alpine Land & Reservoir Co.*, 697 F.2d at 858 (noting that "[t]he decree of the district court also allows for appeal of change applications to the federal district court for the District of Nevada"). Idaho's law, on the other hand, does not subject the Director of IDWR to the supervision of the SRBA court, nor does it require the Director to petition any court to enforce the distribution of water. *Compare* Nevada Revised Statute § 533.220(1) with Idaho Code § 42-237a(g) ("[T]he director of the department of water resources in his sole discretion, is empowered . . . [t]o supervise and control the exercise and administration of all rights to the use of ground waters."). While state law generally controls the adjudication and administration of water rights, that state law must be constitutional. Idaho law – as asserted by the State in its Motion – is not, and the State's references to Nevada law are irrelevant to this analysis.

Because the Court lacks jurisdiction, and because the State's administration scheme is clearly unlawful direct regulation of the United States, the Court should reject the State's motion.

* * *

Respectfully submitted this 14th day of September, 2026,

Adam R.F. Gustafson
Principal Deputy Assistant Attorney General

***/s/ Mark Widerschein***
Mark Widerschein
Michelle Nkeng

Katharine Laubach
Trial Attorneys
Natural Resources Section
Energy & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
*Counsel for the United States*

**CERTIFICATE OF SERVICE**

I hereby certify that service of the foregoing was made through the Court's electronic filing and notice system (CM/ECF).

Dated: September 14, 2026

***/s/ Mark Widerschein***
Mark Widerschein, Trial Attorney